1
2
3
4
5
6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

8

9  Adam Arthur Borja,                     No. CV-15-00551-PHX-SPL (BSB)

10                        Petitioner,     **REPORT AND**
                                          **RECOMMENDATION**
11  v.

12  Charles Ryan, et al.,

13                        Respondents.

14

15        Petitioner Adam Arthur Borja has filed a Petition for Writ of Habeas Corpus

16  pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  On July 27, 2105, Respondents filed an answer

17  asserting that Petitioner's claims are procedurally defaulted and barred from federal

18  habeas corpus review.   (Doc. 9.)   Although the Court granted Petitioner several

19  extensions of time to file a reply in support of his Petition, he did not file a reply.

20  (Docs. 15, 19, 21.)  However, on January 4, 2016, Petitioner filed a motion to dismiss the

21  Petition without prejudice, or to stay the proceeding and hold the Petition in abeyance

22  while he presents his claims to the state courts.  (Doc. 22.)  Respondents oppose the

23  motion.  (Doc. 24.)  Petitioner has filed a reply and a "supplemental exhibit" in support of

24  his motion to dismiss or to stay.  (Docs. 25, 26.)  As set forth below, the Court finds that

25  Petitioner's claims are procedurally barred from federal habeas corpus review and

26  recommends that the Petition and the motion to stay be denied.

27  / / /

28  / / /

# I.    Factual and Procedural Background

## A.    Charges, Trial, and Sentencing

On August 7, 2006, Petitioner was indicted in the Maricopa County Superior Court on one count of first-degree murder (Count One), one count of first-degree burglary (Count Two), and one count of arson of an occupied structure (Count Three), all domestic violence offenses.  (Doc. 9, Ex. A.)  In March 2008, a jury convicted Petitioner as charged.  (Doc. 9, Ex. C.)  On April 9, 2008, the trial court sentenced Petitioner to concurrent terms of imprisonment, the longest of which was life without the possibility of parole until Petitioner had served twenty-five years.  (Doc. 9, Exs. B, D at 2.)

## B.    Direct Appeal

Petitioner appealed his convictions and sentences to the Arizona Court of Appeals. (Doc. 9, Ex. E.)  Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that she could not find any colorable claims to present on appeal. (*Id.*)  The court granted Petitioner permission to file a pro se brief, and counsel notified Petitioner in writing of the deadline for filing his brief.  (Doc. 9, Exs. B, G.)  Petitioner, however, did not do so.  (Doc. 9, Ex. B at 1.)  After searching "the entire record for reversible error," the Arizona Court of Appeals affirmed Petitioner's convictions and sentences.  (Doc. 9, Ex. B.)  Petitioner did not seek review in the Arizona Supreme Court. (Doc. 9, Ex. F.)

## C.    Post-Conviction Review

On August 12, 2009, Petitioner filed a notice of post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (Doc. 9, Ex. H.)  The trial court appointed counsel to represent Petitioner.  (Doc. 9, Ex. I.)   Counsel later filed a notice stating that he had reviewed the record and could not find any issue or claim to raise on post-conviction review.  (*Id.*)  On September 21, 2011, Petitioner filed a pro se petition for post-conviction relief.  (Doc. 9, Ex. J.)  The petition raised several claims challenging the admissibility and reliability of evidence.  (*Id.*)  Petitioner also argued that trial counsel was ineffective for stipulating to the admission of certain evidence.  (*Id.*; Doc. 9, Ex. N at

4.)  On October 3, 2012, the trial court denied post-conviction relief.  (Doc. 9, Ex. L.)  The court found that Petitioner's claims were precluded under Rule 32.2(a).  (*Id.*)  The trial court, however, did not specifically address Petitioner's claim of ineffective assistance of counsel.  (*Id.*)

On October 24, 2012, Petitioner sought review in the Arizona Court of Appeals.  Petitioner did not present any specific claims in his petition for review.  (Doc. 9, Ex. M.)  Rather, he asked the appellate court to review the "Rule 32 pro se brief" in its entirety.  (*Id.* at 2.)  On January 28, 2014, the appellate court granted review, but denied relief.  (Doc. 9, Ex. N.)  With the exception of Petitioner's claim of ineffective assistance of counsel, the appellate court affirmed the trial court's finding that review of Petitioner's claims was precluded because he had not raised them on direct appeal.  (Doc. 9, Ex. N.)

The appellate court found that post-conviction review of Petitioner's claim of ineffective assistance of counsel was not precluded by Rule 32.2(a) because Petitioner could not have presented that claim on direct review.  (*Id.*)  However, the court found that Petitioner had waived review of that claim.  The court explained that Petitioner did not specifically argue his claim of ineffective assistance in his petition for review and the general reference to his petition for post-conviction relief was insufficient to satisfy Rule 32.9(c)(1), which provides that the petition for review itself must contain reasons why relief should be granted.  (*Id.*)  Petitioner sought review in the Arizona Supreme Court; the court denied review on May 21, 2014.[1]

---

[1]  In the Petition, Petitioner indicates that he filed a "second petition" in the state court.  (Doc. 1 at 3.)  However, because Petitioner also states that he filed a "petition for review" in the Arizona Court of Appeals on October 22, 2012 and it was denied on January 28, 2014, Petitioner appears to refer to the petition for review he filed in the appellate court after the denial of his first post-conviction proceeding, as opposed to a second post-conviction proceeding.  (Doc. 1 at 3-4; Doc. 9, Exs. M, N.)

Petitioner also indicates that he filed a "third petition."  (Doc. 1 at 4.)  However, because Petitioner also states that he filed that petition in the Arizona Supreme Court on March 11, 2014 and it was denied on May 21, 2014, it appears that he is referring to the petition for review he filed in the Arizona Supreme Court, not a third petition for post-conviction relief.  (Doc. 1 at 4; Doc. 9, Ex. O.)

**D.      Federal Petition for Writ of Habeas Corpus**

On March 20, 2015, Petitioner filed a timely petition for writ of habeas corpus in this Court.[2]  (Docs. 1, 1-1.)  The Petition raises the following forty-six grounds for relief:[3]

(1)     Petitioner was denied due process under the Fourteenth Amendment because the State did not inform him that Detective Richard Michael Polk was under investigation for committing multiple acts of sexual exploitation of a minor (Doc. 1 at 6-7);

(2)     trial counsel was ineffective for stipulating that Petitioner's computer was in use at 10:45 a.m. on the morning of the alleged murder (Doc. 1 at 7-11);

(3)     trial counsel was ineffective for stipulating that Petitioner's computer was in use at 10:48 a.m. on the morning of the crime instead of calling computer expert Lonnie Dworkin to testify that Detective Ed Baranowski erred when analyzing Petitioner's computer (*Id.* at 12-16);

(4)     Petitioner was denied due process under the Fourteenth Amendment when the prosecutor elicited false testimony from Detective Polk (*Id.* at 16-20);

(5)     Petitioner was denied due process under the Fourteenth Amendment when the trial court allowed the State to enter into evidence a text message written by Reno Montoya and to read the text message to the jury as if it were the words of Ms. Lynn (the victim) (*Id.* at 20-26);

(6)     Petitioner was denied due process under the Fourteenth Amendment when the State destroyed the victim's cell phone, then presented Crime Scene Specialist Anna Lucero's testimony that Petitioner had stolen a SIM card out of the phone (*Id.* at 26-29);

---

[2]     Applying the mailbox rule, the petition is deemed filed the date Petitioner delivered it to prison officials for mailing.  *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988) (a legal document is deemed filed on the date a petitioner delivers it to the prison authorities for filing by mail).  (Doc. 1-1 at 48.)

[3]     The Petition, including the attachments, exceeds 500 pages.  (Doc. 1.)  The Court cites the CM/ECF docket and page numbers for ease of reference.

(7)     Petitioner was denied due process under the Fourteenth Amendment when the State argued that he had committed arson using the gas can seized from his vehicle (*Id.* at 29-30);

(8)     Petitioner was denied due process under the Fourteenth Amendment when the State lost a gasoline sample taken from the gas can that police seized from his vehicle (*Id.* at 31-32);

(9)     Petitioner was denied due process under the Fourteenth Amendment based on the cumulative impact of the errors alleged in Grounds One, Two, Three, Five, Six, Seven, and Eight (*Id.* at 32-35);

(10)    trial counsel was ineffective for failing to impeach Gloria Archuleta with her prior inconsistent statement to police (*Id.* at 35-37);

(11)    Petitioner was denied due process under the Fourteenth Amendment when the court allowed Archuleta "to testify to words she claims she heard Ms. Lynn say to [Petitioner]" (*Id.* at 37-38);

(12)    trial counsel was ineffective for failing to object to Liliana Aguilar's hearsay statements (*Id.* at 39-40);

(13)    Petitioner was denied due process under the Fourteenth Amendment when the State failed to disclose Amanda Sears' pretrial statements (*Id.* at 41-42);

(14)    Petitioner was denied due process under the Fourteenth Amendment when the State admitted hearsay testimony of Amanda Sears without laying a proper foundation for her testimony (*Id.* at 42-42);

(15)    trial counsel was ineffective for failing to depose Amanda Sears before trial and for failing to cross-examine her at trial (*Id.* at 44-45);

(16)    Petitioner was denied due process under the Fourteenth Amendment when the State failed to disclose Deborah Hall's pretrial statements (*Id.* at 45-46);

(17)    Petitioner was denied due process under the Fourteenth Amendment "when the court allowed Deborah Hall to testify about the hearsay statements of [Petitioner]" (*Id.* at 46-47);

(18)    trial counsel was ineffective for failing to cross examine Hall (*Id.* at 47-40);

(19)    the cumulative impact of Grounds Ten, Eleven, Twelve, Fourteen, Fifteen, Seventeen, and Eighteen denied Petitioner due process under the Fourteenth Amendment (*Id.* at 48-51);

(20)    trial counsel was ineffective for failing to object to the admission of Petitioner's letters into evidence (*Id.* at 51-52);

(21)    Petitioner was denied due process under the Fourteenth Amendment when the State introduced into evidence Petitioner's artwork and letters he had written to previous girlfriends (*Id.* at 52-53);

(22)    Petitioner was denied due process under the Fourteenth Amendment when the State selectively read letters that Petitioner had written to previous girlfriends to mislead the jury into believing that he had written them to Ms. Lynn (*Id.* at 53-56);

(23)    Petitioner was denied due process under the Fourteenth Amendment when the State compelled him to testify against himself by its selective reading of his letters (*Id.* at 56-57);

(24)    trial counsel was ineffective for failing to object to the admission into evidence of trial exhibits 178, 179, 180, 181, 182, 183, 184, and 185, which included notebooks found in a backpack seized from Petitioner's bedroom (*Id.* at 57-59);

(25)    Petitioner was denied due process under the Fourteenth Amendment when the State introduced into evidence eight notebooks of Petitioner's writings that were found in a backpack in his room (*Id.* at 59-60);

(26)    Petitioner was denied due process under the Fourteenth Amendment when the State selectively read rap lyrics and introduced an artistic portrayal of the name "Ashley," to mislead the jury into believing that Petitioner had written the lyrics to Ms. Lynn (*Id.* at 60-62);

(27)    Petitioner was denied due process under the Fourteenth Amendment when the State compelled him to testify against himself by selectively reading his rap lyrics (*Id.* at 63-65);

(28)    Petitioner was denied due process under the Fourteenth Amendment when the State submitted eleven different exhibits of Petitioner's writings, then selectively read twenty-three excerpts from them and inserted opinions to prejudice the jury against Petitioner (*Id.* at 65-67; Doc. 1-1 at 1);

(29)    Petitioner was denied due process under the Fourteenth Amendment when the court allowed the State to play the video of his in-custody interview with Detective Polk (Doc. 1-1 at 1-4);

(30)    trial counsel was ineffective for failing to object to evidence of Petitioner's in-custody interview on the ground that the State did show that the interview contained a valid waiver of Petitioner's *Miranda* rights (*Id.* at 4-9);

(31)    Petitioner was denied due process under the Fourteenth Amendment when the State presented the video of his in-custody interview without showing that it contained a valid waiver of Petitioner's *Miranda* rights (*Id.* at 9-12);

(32)    Petitioner was denied due process under the Fourteenth Amendment when the State showed the jury an improperly redacted video of his in-custody interview with Detective Polk (*Id.* at 12-13);

(33)    trial counsel was ineffective for failing to object to Petitioner's statements about his prior drug possession charge coming into evidence through his in-custody interview (*Id.* at 13-14);

(34)    Petitioner was denied due process under the Fourteenth Amendment "when the State failed to investigate, interview, or call [his] sister, Cindy Rodriguez, to testify so the State could dispute [Petitioner's] alibi defense as unverifiable" (*Id.* at 15-18);

(35)    Petitioner was denied due process under the Fourteenth Amendment when the State called attention to the absence of Rodriguez's testimony and argued that she was sitting in the courtroom, but the defense did not call her as a witness (*Id.* at 18-20);

(36)    trial counsel was ineffective for failing to introduce evidence that Petitioner's vehicle was malfunctioning (*Id.* at 20-21);

(37)    trial counsel was ineffective for failing to introduce evidence that Petitioner's vehicle had been stolen from the police impound lot and for failing to suppress evidence relating to the operation of his vehicle (*Id.* at 21-23);

(38)    Petitioner was denied due process under the Fourteenth Amendment when the State argued that Petitioner's testimony was less credible because he was "on trial for murder" (Doc. 1-1 at 24-25);

(39)    trial counsel was ineffective for failing to call Orlando Rodriguez to testify and for failing to argue that the window to Ms. Lynn's room was broken when the Phoenix Fire Department arrived on the scene (*Id.* at 25-28);

(40)    Petitioner was denied due process under the Fourteenth Amendment when the State misstated the testimony of Reno Montoya to strengthen its argument that Ms. Lynn didn't have any problems with a co-worker (*Id.* at 28-30);

(41)    Petitioner was denied due process under the Fourteenth Amendment when the State argued facts that were not in evidence, inserted opinions, and testified about Ms. Lynn's frame of mind (*Id.* at 30-31);

(42)    Petitioner was denied due process under the Fourteenth Amendment when the State argued that Petitioner knew about and was jealous of the relationship between Ms. Lynn and Reno Montoya (*Id.* at 31-35);

(43)    Petitioner was denied due process under the Fourteenth Amendment when the State gave its opinion of Petitioner by drawing comparisons between him and Reno Montoya (*Id.* at 35-37);

(44)    Petitioner was denied due process under the Fourteenth Amendment "when the State argued that [Petitioner's] parents knew that [he] murdered Ms. Lynn, and were conspiring with [him] to help him get away with murder" (*Id.* at 37-45);

(45)    appellate counsel was ineffective for advising Petitioner that he was not required to file a supplemental brief on direct appeal (*Id.* at 45-46); and

(46)    Petitioner was denied due process under the Fourteenth Amendment by the cumulative impact of the State's misconduct at his trial.  (*Id.* at 46-47.)

1    Respondents argue that federal habeas corpus review of Petitioner's claims is

2    procedurally barred.  (Doc. 9 at 12-14.)  Petitioner disputes that assertion.  (Doc. 25.)  As

3    discussed below, the Court finds review of Petitioner's claims procedurally barred.

4    **II.    Exhaustion and Procedural Bar**

5    Ordinarily, a federal court may not grant a petition for writ of habeas corpus

6    unless the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b).  To

7    exhaust state remedies, a petitioner must afford the state courts the opportunity to rule

8    upon the merits of his federal claims by "fairly presenting" them to the state's "highest"

9    court in a procedurally appropriate manner.[4]  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

10   ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly

11   present' his claim in each appropriate state court . . . thereby alerting that court to the

12   federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same).

13   A claim has been fairly presented if the petitioner has described both the operative

14   facts and the federal legal theory on which his claim is based.  *See Baldwin*, 541 U.S. at

15   33.  A "state prisoner does not 'fairly present' a claim to a state court if that court must

16   read beyond a petition or brief . . . that does not alert it to the presence of a federal claim

17   in order to find material, such as a lower court opinion in the case, that does so."  *Id.* at

18   31-32.  Thus, "a petitioner fairly and fully presents a claim to the state court for purposes

19   of satisfying the exhaustion requirement if he presents the claim: (1) to the proper

20   forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and

21   legal basis for the claim."  *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005)

22   (internal citations omitted).

23   The requirement that a petitioner exhaust available state court remedies promotes

24   comity by ensuring that the state courts have the first opportunity to address alleged

25   violations of a state prisoner's federal rights.  *See Duncan v. Walker*, 533 U.S. 167, 178

26   _____

27   [4]  In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona

28   Court of Appeals either through the direct appeal process or post-conviction proceedings. *Crowell v. Knowles*, 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

(2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).  Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims.  *See Coleman*, 501 at 731-32.  Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims.  *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).  If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted.  *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds.  *See Beard v. Kindler*, 558 U.S. 53 (2009).  "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance."  *Coleman*, 501 U.S. at 731-32.  In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision."  *Harris v. Reed*, 489 U.S. 255, 260 (1989).

A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim.  *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985).  A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed."  *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994).  If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate.  *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989).  "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own

mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless claims regardless of whether the claim was properly exhausted in state court. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court to allow claims to be raised in state court if they are subject to dismissal under § 2254(b)(2) as "plainly meritless").

## III. Petitioner's Claims are Procedurally Barred

Petitioner asserts that with the exception of Grounds Four, Twenty-Nine, Thirty-Eight, and Forty-One, he presented all of his claims in "the lower courts." (Doc. 1 at 5.) However, as Respondents argue, Petitioner did not properly present to the Arizona Court of Appeals any of the claims presented in the Petition and they are barred from federal habeas corpus review.

Petitioner did not present any of his claims on direct review.[5] Appellate counsel filed an *Anders* brief. (Doc. 9, Ex. E.) Although Petitioner had the opportunity to file a supplemental brief, and counsel specifically notified Petitioner of that opportunity, he did not file a supplemental brief. (Doc. 9, Exs. B, G.) Petitioner, however, presented several claims in a petition for post-conviction relief, which the trial court denied on the ground

---

[5] As the Arizona Court of Appeals noted, Petitioner could not have presented any claims of ineffective assistance of counsel on direct appeal. (Doc. 9, Ex. N.)

that Petitioner's claims were precluded under Rule 32.2(a) because he had failed to raise them on direct appeal.  (Doc. 9, Ex. L.)

Petitioner then sought appellate review of the trial court's denial of post-conviction relief.  (Doc. 9, Ex. M.)  Petitioner argued that he did not knowingly waive the claims asserted in his petition for post-conviction relief, but that appellate counsel had advised him that he was not obligated to file a supplement to the *Anders* brief.  (*Id.* at 2.)  Petitioner did not raise any specific claims for relief in his petition for review, but requested that the appellate court consider his Rule 32 petition in its "entirety."  (*Id.*)

The appellate court noted that, on post-conviction review, Petitioner had raised "multiple claims of trial error and a claim that trial counsel provided ineffective assistance by entering into an evidentiary stipulation."  (Doc. 9, Ex N at 2.)  The appellate court affirmed the trial court's finding that post-conviction review of Petitioner's claims of trial error was precluded under Rule 32.2(a)(3).  (*Id.* at 4.)  The appellate court rejected Petitioner's assertion that appellate counsel was responsible for his failure to raise his claims in a supplemental appellate brief.  (*Id.*)  The court also stated that, to the extent that Petitioner's argument could be construed as asserting a claim of ineffective assistance of appellate counsel, that claim lacked merit.  (*Id.* at 3 n.2.)

The appellate court next noted that Petitioner had presented to the trial court a single claim of ineffective assistance of trial counsel related to counsel's decision to stipulate to the admission of certain evidence.  (*Id.* at 4.)  The appellate court found that Rule 32.2(a)(3) did not preclude post-conviction review of that claim because Petitioner could not have raised a claim of ineffective assistance of trial counsel on direct appeal.  (*Id.*)  However, the court found that Petitioner had waived review of that claim because it was not specifically presented in the petition for review and Petitioner's general reference to his "Rule 32 pro se brief in its entirety" did not satisfy Rule 32.9(c)(1), which requires that the petition for review itself must contain reasons why relief should be granted.  (*Id.*)  Accordingly, the appellate court concluded that Petitioner had waived review of his claim of ineffective assistance of counsel.  (*Id.*)

The Court finds that federal habeas corpus review of Petitioner's claims is procedurally barred because he either did not present his claims to the Arizona Court of Appeals and state law would preclude review of those claims, or the appellate court found review of Petitioner's claims precluded by an adequate and independent state rule.

To the extent that Petitioner did not present his claims to the state courts, they are technically exhausted and procedurally barred because it would be futile for Petitioner to return to the state courts to try to exhaust his claims because a successive petition for post-conviction relief would be untimely under Rule 32.4, and his claims would be precluded from Rule 32 review because they could have been raised in Petitioner's prior post-conviction proceeding. *See Teague*, 489 U.S. at 297-99; *see also* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (2006) ("As a general rule, when [claims] are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims [] will be deemed waived and precluded.") (internal quotation omitted).

Additionally, Petitioner's claims do not satisfy any of the exceptions to the timeliness or preclusion rules in Rule 32.4(a) and Rule 32.2, including being held in custody after the imposed sentence expired, the presentation of newly discovered material facts that probably would have changed the verdict or sentence, the failure to file a timely notice of post-conviction relief or a notice of appeal that was not the defendant's fault, a change in the law, or the petitioner's actual innocence. *See* Rule 32.2(b) (citing Rule 32.1(d), (e), (f), (g) and (h).)

Ground Forty-Five includes a claim that could be construed as implicating an exception to Arizona's rules of preclusion, Rule 32.1(f), as applied to Petitioner's claims that were not presented on direct appeal. However, Petitioner does not satisfy Rule 32.1(f), which provides that a claim is not precluded from review in a successive petition for post-conviction relief if the "failure to file a . . . notice of appeal within the prescribed time was without fault on the defendant's part." Ariz. R. Crim. P. 32.1(f). In Ground Forty-Five, Petitioner alleges that appellate counsel failed to inform him that he could file

a supplemental appellate brief.  (Doc. 1 at 45-46.)  On post-conviction review, Petitioner argued in his brief to the appellate court that appellate counsel was to blame for his failure to raise on appeal the issues he presented for the first time in his Rule 32 petition.  (Doc. 9, Ex. N at 3.)

The appellate court rejected this argument based on evidence that counsel had asked Petitioner to notify her in writing of any issues he thought should be raised on appeal, notified Petitioner in writing that if she determined there were no arguable issues to raise, she would file an *Anders* brief, and advised him that he could raise his issues in a supplemental brief.  (*Id.*)  Additionally, in a subsequent letter, counsel notified Petitioner that she had found no viable issues to present on appeal and would file an *Anders* brief. (*Id.*)  She also explained that she had requested additional time for Petitioner to file a supplemental brief and provided him with the record.  (*Id.*)  After the court set a due date for the supplemental brief, counsel informed Petitioner of the date and informed him that he had the option of filing a supplemental brief raising "additional points for the court to consider."  (*Id.*)  Petitioner does not dispute the appellate court's description of these communications with appellate counsel.  (Doc. 25.)

As stated above, the state court has already concluded that Rule 32.1(f) would not permit review of an untimely or successive Rule 32 petition based on the allegations in Ground Forty-Five.   Accordingly, Petitioner's claims that were not presented to the Arizona Court of Appeals are technically exhausted and procedurally barred from federal habeas corpus review.  *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)); *see also Boerckel*, 526 U.S. at 848.

Federal habeas corpus review of Petitioner's claims is also barred because, to the extent that Petitioner presented his claims to the appellate court on post-conviction review, the appellate court found review of those claims precluded under Rules 32.2(a)(3) and 32.9(c).  (Doc. 9, Ex. N); *see Harris*, 489 U.S. at 260.  *See also* Ariz. R. Crim. P.

32.9(c)(1) (stating that a petition for review must include all reasons why the petition should be granted and shall not incorporate any document by reference); Ariz. R. Crim. P. 32.2(a)(3) (a petitioner is precluded from relief based on any ground waived in a previous collateral proceeding).  The appellate court's ruling based on Rules 32.9(c) and 32.2(a)(3) did not depend on federal law or an examination of the merits of Petitioner's claims, and thus, the ruling was "independent" of federal law.   (Doc. 9, Ex. N); *see Nitschke v. Belleque*, 680 F.3d 1105, 1110 (9th Cir. 2012) (discussing requirement that state procedural rule must rest on an "independent" state law ground).

Additionally, Rules 32.9(c) and 32.2(a)(3) are "adequate" because Arizona's procedural rules are regularly followed.  *See Simmons v. Schriro*, 187 Fed. App'x. 753, 754 (9th Cir. 2006) (holding that Arizona's procedural rules are "clear" and "well-established"); *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998) (finding Rule 32.2(a)(3) regularly followed and adequate); *Miloni v. Schriro*, 2006 WL 1652578, *5 (D. Ariz. Jun. 7, 2006) (concluding that a procedural ruling based on Rule 32.9(c) is adequate); *State v. Carriger*, 692 P.2d 991, 995 (Ariz. 1984) (observing that "[p]etitioners must strictly comply with Rule 32 or be denied relief"); *State v. French*, 7 P.3d 128, 131 (Ariz. Ct. App. 2000) (summarily rejecting claims for failure to comply with Rule 32.9), *disapproved of on other grounds by Stewart v. Smith*, 46 P.3d 1067, 1071 (Ariz. Ct. App. 2002).

**IV.    Petitioner has not Established a Basis to Overcome the Procedural Bar**

Because Petitioner's claims are procedurally defaulted, federal habeas corpus review is unavailable unless Petitioner establishes a "fundamental miscarriage of justice" or "cause and prejudice" to overcome the procedural bar.  *See Coleman*, 501 U.S. at 749. For the reasons below, the Court finds that Petitioner has not established a basis to overcome the procedural bar.

**A.    Fundamental Miscarriage of Justice**

A federal court may review the merits of a procedurally defaulted claim if the petitioner demonstrates that failure to consider the merits of that claim will result in a

"fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A "fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup,* 513 U.S. at 324. The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Petitioner does not argue that failure to consider his claims will result in a fundamental miscarriage of justice. (Doc. 1, Doc. 1-1; Doc. 25.) Additionally, Petitioner has not presented new evidence and has not shown that failure to consider his procedurally defaulted claims will result in a fundamental miscarriage of justice. Thus, he has not met *Schlup's* high standard and this exception does not excuse the procedural bar.

## B.  Cause and Prejudice

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice." *Coleman*, 501 U.S. at 750. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298. A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)

(emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

Liberally construing the Petition, to establish case Petitioner argues that appellate counsel was ineffective because she misadvised Petitioner that he was not required to file a supplement brief on direct appeal. (Doc. 1-1 at 46.) Petitioner also argues that he was not aware of the issues presented in Grounds Four, Twenty-Nine, Thirty-Eight, and Forty-One until he was "drafting this Habeas Petition." (Doc. 1 at 19; Doc. 1-1 at 4, 25, 48.) As discussed below, these assertions do not establish cause.

### 1.     Ineffective Assistance of Appellate Counsel

In certain circumstances, the ineffective assistance of appellate counsel may constitute cause to excuse procedural default, however, "a claim of ineffective assistance must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier*, 477 U.S. at 488-89; *see also Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted"); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (same).

In Ground Forty-Five, Petitioner asserts that appellate counsel was ineffective for advising him that he was not required to file a supplemental petition on direct appeal. (Doc. 1 at 45-56.) Petitioner did not properly exhaust this claim of ineffective assistance of appellate counsel in the state courts. (Doc. 9, Exs. M, N). On post-conviction review, Petitioner argued that appellate counsel was to blame for his failure to raise his claims on direct appeal. (Doc. 9, Ex. N at 3.) However, he did not specially argue that appellate counsel was ineffective. (*Id.*) In a footnote, the appellate court stated, that "to the extent this argument could be read as a claim of ineffective assistance of appellate counsel," it failed because it was conclusory. (*Id.* at n .2.) The appellate court, however, did not conclude that Petitioner had raised a claim of ineffective assistance of appellate counsel.

(*Id.*)   Thus, Petitioner did not present a claim of ineffective assistance of appellate counsel to the state courts.

Moreover, even if Petitioner properly presented Ground Forty-Five to the appellate court on post-conviction review, doing so was insufficient to exhaust that claim. The submission of a claim for the first time to an appellate court on discretionary review does not constitute fair presentation to satisfy the exhaustion requirement. *Castille v. Peoples*, 489 U.S. 346, 351-52 (1989); *Casey v. Moore*, 386 F.3d 896, 915-919 (9th Cir. 2004). Under Arizona law, the Arizona Court of Appeals has only discretionary jurisdiction over petitions for review from the denial of post-conviction relief. *See* Ariz. R. Crim. P. 32.9(f)(stating that the "appellate court may, in its discretion, grant review and order oral argument if deemed necessary . . . .") Accordingly, Petitioner did not properly exhaust Ground Forty-Five and, therefore, the ineffective assistance of appellate counsel alleged in Ground Forty-Five does not establish cause to overcome the procedural bar to habeas corpus review of Petitioner's claims.

However, in *Maples v. Thomas*, ___ U.S. ___ 132 S. Ct. 912, 923-24 (2012), the Supreme Court recognized a limited exception to the general rule that to constitute cause, a claim of ineffective assistance of counsel must be an independent constitutional violation. In *Maples*, the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent (and under the law of agency, that negligence being chargeable to the petitioner), but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Assuming that *Maples* applies to appellate counsel in the context of direct review, Petitioner has not shown that appellate counsel abandoned him. Petitioner does not allege that appellate counsel committed egregious professional misconduct, failed to communicate with him, or failed to respond to his inquiries with respect to preparation of a petition for review. Petitioner was not left without functioning counsel, as occurred in *Maples*. Instead, after reviewing the record, appellate counsel filed an *Anders* brief, and Petitioner was permitted to file a supplemental brief, but did not do so. (Doc. 9, Ex. B.)

Appellate counsel initially requested that Petitioner notify him in writing of any issues he thought should be raised on appeal.  (Doc. 1-2 at 88.)  She advised Petitioner that the issues he suggested would help guide her review of the record.  (*Id.*)  Appellate counsel further stated that if she determined that there were no arguable issues to present on appeal, she would file an *Anders* brief, and Petitioner would have "an opportunity to raise [his] issues in a supplemental brief."  (*Id.*)  Counsel subsequently filed an *Anders* brief and requested additional time for Petitioner to file a supplemental brief.  (Doc. 9, Ex. G.)  When the court set a due date for the supplemental brief, counsel notified Petitioner of that date and stated that a supplemental brief was "optional," but if Petitioner wished to raise additional points for the court to consider, he could do so.  (*Id.*)  She provided Petitioner with the record in his case.  (*Id.*)

As set forth above, the record reflects that appellate counsel properly explained to Petitioner that she found no arguable issue to present on appeal and filed an *Anders* brief, but that Petitioner was permitted to file a supplemental brief.  *See State v. Clark*, 2 P.3d 89, 96 (Ariz. Ct. App. 1996) (stating that when appellate counsel files an *Anders* brief, the defendant has the opportunity to file a pro se supplemental brief).  Despite this information, Petitioner did not file a supplemental brief and did not file a motion for reconsideration even when invited to do so by the appellate court.  (Doc. 9, Ex. B at 3 (stating that Petitioner had thirty days from the date of the appellate court's decision to file a pro per motion for reconsideration or a petition for review).)  Thus, Petitioner has not shown that appellate counsel abandoned him or that her conduct constitutes cause to excuse the procedural bar to review of his claims.[6]

### 2.      Petitioner's Lack of Awareness of Claims

To establish cause to excuse the procedural bar to habeas corpus review of Grounds Four, Twenty-Nine, Thirty-Eight, and Forty-One, Petitioner asserts, without further explanation, that he "became aware of [those] issue[s] while drafting this Habeas

---

[6]   Additionally, based on this same evidence, Petitioner has not established that appellate counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), and his claim of ineffective assistance of appellate counsel lacks merit.

Petition." (Doc. 1 at 19; Doc. 1-1 at 4, 25, 48.)  Petitioner, however, does not argue that he was unaware of the facts underlying those claims or that the legal basis for those claims was not reasonably available until he was drafting his Petition.  *See Murray*, 477 U.S. at 488.

Ground Four asserts that Petitioner's due process rights were violated when the prosecutor elicited perjured testimony from Detective Polk.  (Doc. 1 at 16.)  Petitioner asserts that Detective Polk falsely testified that he did not have any direct knowledge regarding when anything was uploaded or downloaded on Petitioner's computer.  (*Id.*) To support this claim, Petitioner cites Detective Baranowski's report, which indicates that Detective Polk contacted Detective Baranowski to analyze Petitioner's computer and that Detective Polk discussed the findings of that analysis with Detective Baranowski. (Doc. 1 at 17-19, Exs. 27, 30; Doc. 1-3 at 13-23; Doc. 1-3 at 75; Doc. 1-4 at 1.)  Thus, Petitioner may argue that he was unaware of Detective Polk's alleged false testimony until he reviewed Detective Baranowski's reports.

The record reflects that Detective Baranowski's reports are from May 2007 and indicate that, on defense counsel's request, Detective Polk contacted Detective Baranowski and requested that Petitioner's computer be analyzed to determine whether he was buying music on line at the time of the alleged murder.  (Doc. 1-3 at 17.) Petitioner does not state when he obtained Detective Baranowski's reports.  However, because defense counsel requested the analysis of Petitioner's computer in 2007, Petitioner could have discovered the reports at the time of trial.  Additionally, the record reflects that appellate counsel gave Petitioner the record of his case in February 2009, before the March 23, 2009 deadline for Petitioner to file a supplemental appellate brief. (Doc. 1-3 at 1-2)  Therefore, the facts underlying Ground Four were available to Petitioner at the time of trial or before the deadline for filing a pro se appellate brief. Additionally, Ground Four is based on an alleged violation of due process generally and thus, the legal basis of this claim was also available at the time of trial.  Accordingly, Petitioner has not shown that some objective factor external to him impeded his efforts to

1    comply with the state's procedural rules, *see Teague*, 489 U.S. at 298, and therefore, has

2    not shown cause for his failure to present Ground Four to the state courts on direct or

3    post-conviction review.

4        Ground Twenty-Nine alleges that Petitioner was denied his right to due process

5    when the trial court ruled that *Crawford v. Washington*, 541 U.S. 36 (2004), did not

6    preclude the admission into evidence of the videotape of Petitioner's in-custody interview

7    with Detective Polk.   (Doc. 1-1 at 1-3.)   To support this claim, Petitioner states that

8    pursuant to *Crawford*, defense counsel objected to the videotaped interview being played

9    in its entirety because defense counsel had no opportunity to cross-examine the witness,

10   Petitioner, due to his Fifth Amendment privilege against self-incrimination.   (*Id.* at 1.)

11   Petitioner states that the trial court ruled that *Crawford* did not apply and that the

12   videotaped interview was admissible.   (*Id.*)   The facts underlying Ground Twenty-Nine

13   were available to Petitioner at the time of trial.

14       Additionally, Ground Twenty-Nine is based on an alleged violation of due process

15   generally and thus, the legal basis of this claim was also available at the time of trial.

16   Accordingly, Petitioner has not shown that some objective factor external to him impeded

17   his efforts to comply with the state's procedural rules, *see Teague*, 489 U.S. at 298, and

18   therefore, has not shown cause for his failure to present this ground for relief to the state

19   courts on direct or post-conviction review.   *See Murray*, 477 U.S. at 535 ("the mere fact

20   that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the

21   claim despite recognizing it, does not constitute cause for a procedural default.").

22       Grounds Thirty-Eight and Forty-One allege due process violations based on the

23   prosecutor's closing argument.   (Doc. 1-1 at 24, 30.)   Ground Thirty-Eight is based on the

24   prosecutor's argument that Petitioner was less credible than other witness because he was

25   on trial for murder.   (Doc. 1-1 at 24.)   In Ground Forty-One, Petitioner asserts that the

26   prosecutor argued facts not in evidence and inserted opinions into the closing argument.

27   (Doc. 1-1 at 30)   The facts underlying these grounds are based on events that occurred

28   during closing argument and, therefore, were known to Petitioner at the time of trial.

Additionally, these grounds are based on alleged violations of due process generally and, thus, the legal basis of these claims was also available at the time of trial. Accordingly, Petitioner has not shown that some objective factor external to him impeded his efforts to comply with the state's procedural rules. *See Teague*, 489 U.S. at 298. Therefore, Petitioner has not shown cause for his failure to present Grounds Thirty-Eight and Forty-One to the state courts on direct or post-conviction review. Petitioner's failure to recognize these claims earlier does not constitute cause. *See Murray*, 477 U.S. at 535.

### 3. Conclusion

As set forth above, Petitioner has not shown that appellate counsel's abandonment or ineffective assistance constitutes cause to excuse the procedural default of his claims. He also has not shown that his failure to recognize the issues presented in Grounds Four, Twenty-Nine, Thirty-Eight, and Forty-One until he was "drafting this Habeas Petition" constitutes cause. (Doc. 1 at 19; Doc. 1-1 at 4, 25, 48.) Furthermore, Petitioner's status as an inmate, lack of legal knowledge, and limited legal resources do not establish cause to excuse the procedural bar to review of his claims. *See Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance did not amount to cause to excuse a procedural default); *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (petitioner's reliance upon jailhouse lawyers did not constitute cause). Accordingly, the Court does not consider whether Petitioner can establish prejudice. *See Smith v. Murray*, 477 U.S. 527, 533 (1986) (stating that the court does not need to consider prejudice when the petitioner does not demonstrate cause). Thus, Petitioner has not established a basis to overcome the procedural bar to federal habeas corpus review of his claims.

## V. Motion to Dismiss or to Stay and hold Petition in Abeyance

Petitioner has filed a motion to dismiss the Petition without prejudice, or to stay the proceedings and hold the Petition in abeyance while he presents his claims in the state courts. (Doc. 22.) Habeas corpus relief is unavailable "unless the applicant has exhausted the remedies available in the courts of the State." *See* 28 U.S.C.

§ 2254(b)(1)(A).   In *Rose v. Lundy*, the Supreme Court held that "a district court must dismiss habeas petitions containing both unexhausted and exhausted claims."   455 U.S. 509, 522 (1982).   However, after the *Rose* decision, the AEDPA was enacted and it imposed a one-year statute of limitations for filing federal habeas corpus petitions.   *See* 28 U.S.C. § 2254(d)(1).   The Supreme Court then recognized that if a petitioner filed a mixed petition (a petition containing both exhausted and unexhausted claims) in federal court, the combined effect of *Rose* and the AEDPA could result in the loss of all claims, including those already exhausted, because the limitations period could expire while a petitioner returned to state court to present his unexhausted claims.   *Pliler v. Ford*, 542 U.S. 225, 230-31 (2004).   Thus, in *Rhines v. Weber*, the Supreme Court held that the district court has limited discretion to hold in abeyance a habeas petition containing both exhausted and unexhausted claims to permit a petitioner to return to state court to exhaust additional claims while the federal proceedings are stayed. 544 U.S. 269, 276-77 (2005).

The stay-and-abeyance procedure is only appropriate when the district court determines that (1) there was good cause for the petitioner's failure to exhaust his claims in state court, (2) the unexhausted claims are not "plainly meritless," and (3) there is no indication that the petitioner has engaged in intentionally dilatory litigation tactics. *Rhines*, 544 U.S. at 277-78.   In *Rhines*, the Court cautioned that the stay-and-abeyance procedure "should be available only in limited circumstances," and should be applied consistently with the AEDPA's twin purposes of "reduc[ing] delays in the execution of state and federal criminal sentences" and encouraging "petitioners to seek relief from state courts in the first instance." *Id.* at 277.

The stay and abeyance procedure is not available in this case because the Petition is not mixed.   Rather, all of Petitioner's claims are technically exhausted and procedurally barred from review because Petitioner no longer has state remedies available to consider his claims. *See Cassett v. Stewart*, 406 F.3d 614, 621, n.5 (9th Cir. 2001) (citation omitted) ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies

any longer 'available' to him."); *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (stating that a petitioner has satisfied the exhaustion requirement if: (1) he has fairly presented his federal claim to the highest state court with jurisdiction to consider it; or (2) no state remedies remain available).

Petitioner may argue that Ground Forty-Five is unexhausted. However, Ground Forty-Five is plainly meritless as discussed in Section IV.B.1. Accordingly, the stay-and-abeyance procedure is not appropriate in this case. *See Rhines*, 544 U.S. at 277-78; *Felder v. Hickman*, 2007 WL 2265146, at *5 (S.D. Cal. Aug. 6, 2007) (when a claim is procedurally barred and no state remedies remain, it is exhausted and the stay and abeyance procedure does not apply); *Greer v. Ariz. Attorney General*, 2006 WL 2553403, at *7 n.8 (D. Ariz. Sept. 1, 2006) (when claim is procedurally barred under state law it would be futile for a petitioner to return to state court to attempt to exhaust her claims and the stay and abeyance procedure does not apply).

Petitioner alternatively asks the Court to dismiss the Petition without prejudice so he may file "a successive untimely petition for writ of habeas corpus." (Docs. 22, 25 at 2.) As previously stated, Arizona law would preclude a successive petition for post-conviction relief. Therefore, dismissing the Petition without prejudice would be futile. Accordingly, the Court recommends that the motion to dismiss without prejudice or to stay and hold in abeyance be denied.

**VI.   Conclusion**

As set forth above, Petitioner is not entitled to habeas corpus relief because federal habeas corpus review of his claims is procedurally barred and Petitioner has not established a basis to overcome that bar. Accordingly, the Court recommends that the Petition be denied. In addition, the stay-and-abeyance procedure is not available in this case, and dismissing the Petition without prejudice would be futile. Therefore, the Court recommends that the motion to dismiss without prejudice or to stay and hold in abeyance be denied.

Accordingly,

1    **IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be

2    **DENIED**.

3    **IT IS FURTHER RECOMMENDED** that the motion to dismiss without

4    prejudice or to stay and hold the Petition in abeyance (Doc. 22) be **DENIED**.

5    **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

6    leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the

7    Petition is justified by a plain procedural bar and reasonable jurists would not find the

8    procedural ruling debatable.

9    This recommendation is not an order that is immediately appealable to the Ninth

10   Circuit Court of Appeals.  Any notice of appeal, pursuant to Federal Rule of Appellate

11   Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The

12   parties have fourteen days from the date of service of a copy of this recommendation

13   within which to file specific written objections with the Court.  *See* 28 U.S.C.

14   § 636(b)(1); Fed. R. Civ. P. 6 and 72.  The parties have fourteen days within which to file

15   a response to the objections.  Failure to file timely objections to the Magistrate Judge's

16   Report and Recommendation may result in the District Court's acceptance of the Report

17   and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328

18   F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual

19   determination of the Magistrate Judge may be considered a waiver of a party's right to

20   appellate review of the findings of fact in an order or judgment entered pursuant to the

21   Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

22   Dated this 8th day of March, 2016.

23

24

25   _____

26   Bridget S. Bade

     United States Magistrate Judge

27

28

- 25 -